## A04A2361. KAHLIG v. MARTINEZ.

(612 SE2d 833)

RUFFIN, Chief Judge.

Pursuant to the Uniform Enforcement of Foreign Judgments Law ("the Uniform Law"),[1] Kay Martinez filed in Cherokee County State Court a judgment obtained against John A. Kahlig in the district court of Bexar County, Texas. The Cherokee County court ordered that the Texas judgment be entered and issued a writ of execution. Kahlig filed a motion to set aside the judgment, arguing primarily that the Texas court lacked personal jurisdiction over him because he had not been served with the Texas "suit for judgment." The Cherokee County court denied the motion, and we granted Kahlig's application for discretionary appeal. For reasons that follow, we affirm.

Under Georgia law,

> when the defense of lack of personal jurisdiction due to defective service is raised by way of a motion to set aside the judgment, the trial court sits as the trier of fact. Our standard of review in this regard is the "any evidence" rule, and absent an abuse of discretion, we will not reverse a trial court's refusal to set aside a judgment.[2]

Viewed in this manner, the record shows that Martinez represented Kahlig's former wife in a child custody suit filed in Bexar County, Texas, bearing case number 87-C1-13857. In August 2002, Martinez filed a "Motion for Confirmation and Entry of Judgment" relating to a June 1994 award of attorney fees entered in favor of Martinez and against Kahlig for "certain legal services performed for the benefit of the child" during the custody proceeding. Martinez's motion, which she submitted under the style and case number for the custody proceeding, sought a judgment for the 1994 award, plus interest and reasonable additional attorney fees. Martinez also asked that her claim against Kahlig be severed from the original child custody action "to aid her in enforcement of [the] obligation."

---

[1] See OCGA § 9-12-130 et seq.

[2] (Citation omitted.) *Smith v. Wood,* 174 Ga. App. 799 (1) (331 SE2d 636) (1985).

On September 13, 2002, the Texas court granted Martinez's motion and issued a judgment against Kahlig. The Texas court also issued a separate "Order for Severance of Actions," which severed the judgment entered for Martinez from the child custody suit. In both the judgment and the severance order, the Texas court specifically found that proper notice of the proceeding had been given to Kahlig. Without dispute, however, Martinez did not personally serve her motion for confirmation on Kahlig. Rather, she sent it to him by certified mail, but the postal service returned it marked "unclaimed."

In September 2003, Martinez moved the Cherokee County State Court to allow the filing of the 2002 Texas judgment pursuant to the Uniform Law. The Cherokee County court granted the motion, entered the judgment, and issued a writ of execution. Kahlig subsequently moved to set aside or deny enforcement of the Georgia judgment on grounds that (1) the Texas court lacked personal jurisdiction over him, and (2) the Texas judgment was "stale."

In an affidavit attached to his motion to set aside, Kahlig asserted that he never received notice of Martinez's motion for confirmation or the subsequent hearing and thus never had an opportunity to litigate the issues. He also stated that he received notice of a certified letter possibly "around the time" Martinez attempted to serve him by certified mail, but the notice arrived "after the time to pick up the certified mail had expired," and when he went to the post office, the mail had already been returned to the sender. Claiming that he never attempted to avoid service, Kahlig further stated that if he had received notice of Martinez's motion and the hearing, he would have hired counsel to protect his rights.

Relying on our decision in *Kaylor v. Turner*,[3] the Cherokee County court found that the Texas court had maintained personal jurisdiction over Kahlig based on his " 'requisite minimum contacts' in the original family law matter." It also rejected Kahlig's claim that the Texas judgment was stale and, thus, unenforceable. Accordingly, it denied Kahlig's motion.

1. Under OCGA § 9-11-60 (d), a judgment may be set aside based upon the following grounds:

(1) Lack of jurisdiction over the person or the subject matter;
(2) Fraud, accident, or mistake or the acts of the adverse party unmixed with the negligence or fault of the movant; or
(3) A nonamendable defect which appears upon the face of the record or pleadings.

---

[3] 210 Ga. App. 2, 4 (435 SE2d 233) (1993).

On appeal, Kahlig focuses on the first criteria, claiming that the Texas court lacked personal jurisdiction over him. He does not, however, challenge the Cherokee County court's ruling with respect to minimum contacts. Instead, he argues that "he was never served personally or otherwise with [the] 2002 Texas action." He claims, therefore, that because Martinez failed to serve him with this "new action," the resulting judgment is unenforceable.

To support his argument, Kahlig relies exclusively on our decision in *Chambers v. Navare*.[4] In *Chambers*, the plaintiff sought to domesticate in Georgia a default judgment that he had obtained against the defendant in Texas. He submitted a certified copy of the Texas judgment and "a certificate of the Secretary of State showing that two copies of the citation and petition in the Texas action were served upon the Secretary of State, that a copy was forwarded by certified mail/return receipt requested addressed to [the defendant] at a Georgia address, and that it was returned and marked 'UNCLAIMED.' "[5]

Although the plaintiff successfully filed the default judgment in a Georgia state court, the trial court subsequently set aside the judgment, and we affirmed that ruling on appeal.[6] We noted that certified mail marked "unclaimed" is insufficient proof of service of process under Texas law and could "hardly further the aim and objective of the long-arm statute, which is to provide reasonable notice of the suit and an opportunity to be heard."[7] And because the defendant had never been properly served with the suit resulting in a default judgment, the plaintiff had not negated the defendant's jurisdictional defense.[8]

Here, just as in *Chambers*, the certified mail to Kahlig was returned marked "unclaimed." If, as Kahlig contends, the certified mail was service of a new lawsuit rather than notice of a motion in a continuing suit, the reasoning in *Chambers* might persuade us. Martinez, however, filed her motion for confirmation under the case number and style in the child custody action. Through that motion, she sought to confirm and have judgment entered on an award of attorney fees previously issued by the Texas court in the custody suit.

We recognize that the Texas court assigned Martinez's portion of the case a new case number after confirming the attorney fee award and entering judgment in her favor. Kahlig, however, has cited no authority that such action converted Martinez's motion into a new

---

[4] 231 Ga. App. 318 (498 SE2d 173) (1998) (physical precedent only).

[5] See id. at 319 (2).

[6] See id. at 320.

[7] Id. at 319.

[8] See id.

suit subject to rules regarding service of process for a legal action. He also has not shown — or even attempted to argue — that the Texas court lacked authority to continue to hear and resolve motions in the child custody proceeding.[9] And he does not contend that the Texas court lacked personal jurisdiction over him in *that* proceeding. Finally, the Texas court's judgment, which Martinez seeks to domesticate in Georgia, was entered under the style and case number for the original custody action.

Under these limited circumstances, we cannot find that Martinez's motion for confirmation constituted a new suit. Accordingly, *Chambers*, which involved service of process for a suit resulting in default judgment, does not apply in this case. The trial court, therefore, did not abuse its discretion in refusing to set aside the judgment on personal jurisdiction grounds.[10]

2. Kahlig also claims that the 2002 Texas judgment is stale or "dormant." His argument apparently relates back to the 1994 award of attorney fees originally entered in the child custody proceeding. He contends that the "original judgment for attorney's fees" was issued to Martinez in 1994, over eight years before the Texas court entered its 2002 judgment, rendering the 2002 judgment dormant and unenforceable under Georgia law. We disagree.

Pursuant to OCGA § 9-12-60 (a) (1), "[a] judgment shall become dormant and shall not be enforced . . . [w]hen *seven years* shall elapse after the rendition of the judgment before execution is issued thereon and is entered on the general execution docket of the county in which the judgment was rendered."[11] In this case, Martinez seeks to domesticate a Texas judgment that was issued in September 2002, not 1994. And when entered by the Cherokee County court, the judgment was just over one year old. We fail to see, therefore, how it can be deemed dormant.[12] Although Kahlig apparently wants us to ignore the judgment actually filed in Georgia and apply our seven-year dormancy statute to the original 1994 attorney fee award, we refuse to do so.[13]

---

[9] Indeed, it appears that a Texas court retains continuing, exclusive jurisdiction over suits affecting the parent-child relationship "on the rendition of a final order." See Tex. Fam. Code § 155.001 (a).

[10] As noted above, Kahlig's enumeration of error focuses solely on the personal jurisdiction issue raised by lack of service of a new lawsuit; he does not raise any issue regarding lack of notice of a pending motion in an established lawsuit or due process concerns possibly associated therewith. Accordingly, we do not address such concerns. See *Alternative Health Care Systems v. McCown*, 237 Ga. App. 355, 357 (2) (d) (514 SE2d 691) (1999) ("[M]atters not enumerated as error will not be considered on appeal.") (punctuation omitted).

[11] (Emphasis supplied.)

[12] See OCGA § 9-12-60 (a).

[13] See *Aetna Ins. Co. v. Williams*, 237 Ga. App. 881, 883 (1) (517 SE2d 109) (1999) (Georgia dormancy statute applies to "judgments filed under" the Uniform Enforcement of Foreign Judgments Law). We note that, under Texas law, a judgment becomes dormant *ten* years after

*Judgment affirmed. Adams and Bernes, JJ., concur.*

DECIDED MARCH 25, 2005.

*Stuart A. Kurtz,* for appellant.
*Hays & Potter, James W. Hays,* for appellee.

---

it is rendered. See Tex. Civ. Prac. & Rem. Code § 34.001 (a). Thus, the 1994 attorney fee award was not dormant when the Texas court — which presumably was following Texas law — entered the 2002 judgment.